# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN FRIENDS SERVICE COMMITTEE; CENTER FOR CONSTITUTIONAL RIGHTS; HUMAN RIGHTS WATCH; and OPEN SOCIETY INSTITUTE,<br><br>Plaintiffs,<br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>Defendants. | Civil Action No. 26-cv-6830<br><br>Hon. Jesse M. Furman |

**[PROPOSED] BRIEF OF INTERNATIONAL CRIMINAL COURT BAR ASSOCIATION AS *AMICUS CURIAE* IN SUPPORT OF PLANTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

September 23, 2026

Tami Stark
Katie Renzler
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel. (212) 202-2600
tstark@shertremonte.com
krenzler@shertremonte.com

*Counsel for* Amicus Curiae

# TABLE OF CONTENTS


**INTERESTS OF *AMICUS CURIAE*** ........ 1

**INTRODUCTION** ........ 2

**ARGUMENT** ........ 3

**I. ICC PRACTITIONERS ARE REGULATED AND HIGHLY QUALIFIED LEGAL PROFESSIONALS WHO ADHERE TO THE RULE OF LAW** ........ 4

**II. THE EO SIGNIFICANTLY HARMS THE ICCBA, ICC COUNSEL, AND THE ICC'S INTEGRITY** ........ 7

**A. The EO Treads on the ICCBA's Members' and other ICC Counsel's Ability to Satisfy their Professional and Ethical Obligations** ........ 7

**B. The EO Inflicts Harm on the ICCBA as an Institution** ........ 9

**C. The EO Poses a Threat to the Integrity of ICC Proceedings** ........ 10

**CONCLUSION** ........ 11

# TABLE OF AUTHORITIES

**REGULATIONS**

31 C.F.R. § 548.701 (2026) .......... 11

**TREATIES**

Rome Statute of the International Criminal Court, arts. 1, 5, 17, July 17, 1998, 2187 U.N.T.S.90 (2025 consolidated version) .......... 2, 4, 5, 10

**FOREIGN AND INTERNATIONAL AUTHORITIES**

ICC, *Code of Judicial Ethics*, ICC-BD/02-03-22 (as amended Oct. 7, 2022) .......... 10

ICC, *Disciplinary procedure* (last visited Sept. 15, 2026) .......... 6

ICC, *Regulations of the Court*, ICC-BD/01-05-16 (Sept. 26, 2006) .......... 7

ICC, *Regulations of the Registry,* ICC-BD/03-01-06 (Mar. 6, 2006) .......... 7

ICCBA Const. .......... 10

Written Observations by the United States of America Pursuant to Rule 103 (*Situation in the State of Palestine)*, Case No. ICC-01/18, ICC-01/18-300 (Pre-Trial Chamber I Aug. 6, 2024) .......... 5

**OTHER AUTHORITIES**

Executive Order 14,203 of Feb. 6, 2025, *Imposing Sanctions on the International Criminal Court*, 90 Fed. Reg. 9369 (Feb. 12, 2025) .......... 2, 3, 11

ICC, *Guide for applicants to the ICC List of counsel and Assistants to counsel* (last visited Sept. 15, 2026) .......... 7

ICCBA, *ICCBA Condemns the Expansion of US Sanctions to ICC Judges* .......... 9, 11

ICCBA, *Professional Standards Committee* (last visited Sept. 15, 2026) .......... 1

ICCBA, *Training* (last visited Sept. 15, 2026) .......... 1

ICCBA, *Working Groups* (last visited Sept. 15, 2026) .......... 1, 2

ICCBA, *About Us* (last visited Sept. 15, 2026) .......... 1

Michael Dalton & Alexander Ward, *Trump Ramps Up Bid to Dismantle International Criminal Court*, WALL STREET JOURNAL, Sept. 20, 2026 ........ 11

U.S. Dep't of State, *Imposing Further Sanctions in Response to the ICC's Ongoing Threat to Americans and Israelis* (Aug. 20, 2025) ........ 3

U.S. Dep't of State, *Imposing Sanctions in Response to the ICC's Illegitimate Actions Targeting the United States and Israel* (June 5, 2025) ........ 3

## **INTERESTS OF *AMICUS CURIAE***

*Amicus curiae* is the International Criminal Court Bar Association ("ICCBA"), a non-profit organization established in 2016 to "serve[] as a collective voice for independent Counsel and Support Staff who represent victims, defendants and other actors (such as witnesses) before the [International Criminal Court ('ICC')], provide[] a range of support and services to its membership, and act[] as a forum for discussion on all matters pertaining to the ICC." International Criminal Court Bar Association [hereinafter, "ICCBA"], *About Us* (last visited Sept. 15, 2026), https://www.iccba-abcpi.org/about. The ICCBA's membership consists of over 300 lawyers and other legal professionals from more than 80 countries. Among other things, its members represent subjects of the ICC's criminal investigations and prosecutions, as well as States, witnesses, and victims connected to potential and charged offenses.

Central to the ICCBA's mission is its support of the character and fitness of independent ICC counsel, including its members, which it does through multiple internal bodies, such as its Professional Standards Advisory Committee, its Training Committee, and its working group regarding the ICC's Code of Professional Conduct for Counsel ("Code of Conduct"). ICCBA, *Professional Standards Committee* (last visited Sept. 15, 2026), https://www.iccba-abcpi.org/psac; ICCBA, *Training* (last visited Sept. 15, 2026), https://www.iccba-abcpi.org/training; ICCBA, *Working Groups* (last visited Sept. 15, 2026), https://www.iccba-abcpi.org/workinggroups. The ICCBA further supports ICC counsel by working to ensure that the ICC writ large operates in an ethical, independent, and just manner. Through its working groups, the ICCBA conducts research on, hosts conversations regarding, and makes recommendations with respect to issues of importance in the international criminal justice community, such as detention, the use of artificial

intelligence, and the Code of Conduct. ICCBA, *Working Groups* (last visited Sept. 15, 2026), https://www.iccba-abcpi.org/workinggroups.

As the only independent representative body of counsel practicing at the ICC recognized by the Assembly of States of Parties, *amicus* can describe the safeguards that ensure the character and fitness of those lawyers to uphold the rule of law and can offer a unique perspective on the adverse impact that Executive Order 14,203 , *Imposing Sanctions on the International Criminal Court* (the "EO"), has on counsel who practice before the ICC. *See* Executive Order 14,203 of Feb. 6, 2025, *Imposing Sanctions on the International Criminal Court*, 90 Fed. Reg. 9369 (Feb. 12, 2025) [hereinafter, "EO 14,203"].

## INTRODUCTION

The EO threatens the rule of law on a global scale. The ICC plays a critical role in protecting the rule of law at the international level by investigating and, where appropriate, prosecuting the most serious crimes when domestic systems of law are unable or unwilling to do so. Rome Statute of the International Criminal Court, arts. 1, 5, 17, July 17, 1998, 2187 U.N.T.S. 90 (2025 consolidated version) [hereinafter, "Rome Statute"]. The EO declared a national emergency with respect to efforts by the ICC to investigate, arrest, detain, or prosecute U.S. nationals and nationals of certain U.S. allies that are not parties to the Rome Statute. EO 14,203, Preamble. It authorized the U.S. Secretary of State to designate any foreign person who meets the criteria set forth in the EO for inclusion on the Specially Designated Nationals List (the "SDN List"), which in turn subjects those individuals to a host of penalties. *Id.*, § 1(ii). So far, four categories of persons have been designated: judges of the ICC, senior officials of the ICC's Office of the Prosecutor ("OTP"), foreign human rights organizations, and a United Nations Human Rights Special Rapporteur (collectively, "Designated Individuals"). U.S. Dep't of State, *Imposing*

*Sanctions in Response to the ICC's Illegitimate Actions Targeting the United States and Israel* (June 5, 2025); U.S. Dep't of State, *Imposing Further Sanctions in Response to the ICC's Ongoing Threat to Americans and Israelis* (Aug. 20, 2025). In addition to authorizing the sanctioning of specific individuals and organizations, the EO exposes those who provide support to Designated Individuals, including potentially Plaintiffs, to civil and criminal penalties. *See* EO 14,203, § 1(B). In some capacity, these Designated Individuals all participated in or endorsed the ICC's investigations into Afghanistan and/or Palestine (the "Disfavored Investigations"). *Id*.

The EO's reach, however, is not limited to Designated Individuals and those who assist them. Importantly, the EO chills the activities of all lawyers who operate in the ICC's ecosystem, including certain of the Plaintiffs, thereby impairing and even preventing those lawyers' ability to fulfill their professional obligations, eroding trust in the court, and threatening the rule of law. *Amicus curiae* supplies information about the highly qualified legal community that supports the rule of law in the ICC and the impact of the EO on ICC counsel's ability to advocate for their clients at the ICC.

## ARGUMENT

The EO threatens the rule of law at the ICC. Counsel who practice before the ICC are regulated, qualified professionals engaged in legal practice, subject to rigorous character, fitness, and disciplinary requirements. The ICCBA, as the representative body for hundreds of those practitioners, helps its membership and other ICC counsel maintain those rigorous qualifications. It also supports the ICC's ethical functioning by supporting its members and the ICC's operations. The EO significantly harms the ICCBA and ICC counsel by pressuring counsel to abandon their ethical and professional obligations, chilling their advocacy before the court, and obstructing the effective functioning of the ICC and access to justice. The EO further harms the ICCBA and ICC

counsel by aiming to compromise the ICC's independence, which in turn erodes trust in the ICC's operations writ large.

## I. ICC PRACTITIONERS ARE REGULATED AND HIGHLY QUALIFIED LEGAL PROFESSIONALS WHO ADHERE TO THE RULE OF LAW

Counsel who represent participants in the ICC's criminal investigations and prosecutions are highly qualified and ethical practitioners who support the ICC's mission of creating an independent, permanent international criminal justice system. The ICCBA represents the collective interests of and provides services to these attorneys and their support staff, who comprise its membership. By supporting its membership and other ICC counsel, the ICCBA in turn plays a critical role in ensuring that the ICC operates ethically, within the limits of the Rome Statute, and in the interests of justice.

Broadly speaking, there are four categories of lawyers independent of the ICC that participate in ICC proceedings. *See* ICC, *Code of Professional Conduct for Counsel* art. 1, ICC-ASP/4/Res.1 (Dec. 2, 2005) [hereinafter, "Code of Conduct"]. The first group consists of defense counsel, who represent suspects and accused. Fabián O. Raimondo, *Lawyering in the Hague: An Introduction to the Roles of Counsel Practising at the ICC*, 16 Int'l Crim. L. Rev. 946, 957-65 (2016). Like in domestic criminal proceedings, defense counsel at the ICC perform the critical role of enforcing and protecting their clients' rights. *Id*. at 952-55. As set forth in the Rome Statute, those rights include, among others, the right to examine witnesses and present evidence, to not be compelled to testify or confess guilt, to remain silent, and to receive evidence from the OTP. Rome Statute, art. 67.

The second group consists of legal representatives of victims ("LRVs"). *See* ICC, *Rules of Proc. and Evid.*, Rule 90, ICC-ASP/1/3 (Sept. 2002). In the ICC system, "victims" mean "natural persons who have suffered harm as a result of the commission of any crime within the jurisdiction

of the Court" and "organizations or institutions that have sustained direct harm to any of their property which is dedicated to" several purposes, including "humanitarian purposes." *Id.*, Rule 85. Victims whose interests are affected by an ICC investigation or prosecution may present their "views and concerns . . . at stages of the proceedings determined to be appropriate by the Court." Rome Statute, art. 68(3). LRVs assist victims with presenting their "views and concerns" throughout the course of ICC proceedings, including by, among other things, attending and participating in hearings, questioning witnesses at trial, presenting evidence relevant to the impact of the crimes, and questioning witnesses and experts at reparations proceedings. ICC, *Rules of Proc. and Evid.*, Rule 91-94; Raimondo, *Lawyering in the Hague*, *supra*, at 965-68.

The third group consists of counsel for witnesses, who represent witnesses during proceedings and during preparation sessions with the OTP or defense counsel and ensure, among other things, that a witness's right against self-incrimination is protected. Raimondo, *Lawyering in the Hague*, *supra,* at 968-69; ICC, *Rules of Proc. and Evid.*, Rule 74(10).

Finally, the fourth group of counsel appear on behalf of States in ICC investigations and prosecutions, including in pretrial proceedings challenging the ICC's jurisdiction and the admissibility of cases. Raimondo, *Lawyering in the Hague*, *supra*, at 969-70. Notably, the United States has made submissions to the ICC in the past, including in connection with the Situation in Palestine in 2024. *See* Written Observations by the United States of America Pursuant to Rule 103 (*Situation in the State of Palestine)*, Case No. ICC-01/18, ICC-01/18-300 (Pre-Trial Chamber I Aug. 6, 2024). In addition to the four groups set forth above, counsel also appear before the ICC on behalf of other stakeholders, such as civil society and non-governmental organizations. *See* ICC, *Rules of Proc. and Evid.*, Rule 103.

Since the ICC's creation, counsel appearing before the ICC have been held to the highest standards. All "defence counsel, counsel acting for States, amici curiae and counsel or legal representatives for victims and witnesses practicing at the ICC" are required to follow the Code of Conduct. Code of Conduct, art. 1. Pursuant to the Code of Conduct, all such counsel must "give a solemn undertaking" to "perform [their] duties and exercise [their] mission . . . with integrity and diligence, honourably, freely, independently, expeditiously and conscientiously, and that [they] will scrupulously respect professional secrecy and the other duties" imposed by the Code of Conduct. *Id.*, art. 5. They must also maintain strict confidentiality, provide competent legal representation, act independently, avoid conflicts of interest, uphold the integrity of the legal profession, and refrain from discriminatory conduct toward any person, including, especially, their clients. *See, e.g.*, *id.*, arts. 6-9, 12-14, 16, 24, 26, 27. Counsel who violate the Code of Conduct are subject to investigations conducted by an appointed commissioner and an elected disciplinary board, a hearing before the disciplinary board, and, as appropriate, sanctions meted out by the disciplinary board. *Id.*, arts. 36-37, 39-42; *see also* ICC, *Disciplinary procedure* (last visited Sept. 15, 2026), https://www.icc-cpi.int/get-involved/disciplinary-procedure.

Across the board, ICC counsel are highly qualified and closely regulated professionals engaging in legal practice. In order to join the ICC's List of Counsel—the ICC's roster of over one thousand (1,000) lawyers authorized to represent defendants, victims, and other participants in proceedings before the ICC ("List Counsel")—among other requirements, counsel must have ten years of relevant experience as a judge, a prosecutor, or an advocate to qualify as lead counsel or eight years of such experience to qualify as associate counsel. ICC, *Regulations of the Court* reg. 67, ICC-BD/01-05-16 (Sept. 26, 2006); *see also* ICC, *Rules of Proc. and Evid.*, Rule 22. Like the character and fitness requirements of state bars in the United States, practitioners cannot be

admitted as List Counsel if they have been convicted of a serious criminal offense or committed a disciplinary offense considered to be incompatible with the nature of the office of counsel before the court. *Regulations of the Court*, *supra*, reg. 67. The ICC's List of Assistants to Counsel—a roster of practitioners authorized to support List Counsel, *e.g.*, lawyers, legal academics, and other practitioners—must meet similar eligibility requirements. ICC, *Regulations of the Registry* reg. 125, ICC-BD/03-01-06 (Mar. 6, 2006); ICC, *Guide for applicants to the ICC List of counsel and Assistants to counsel* (last visited Sept. 15, 2026), https://bridge.www.icc-cpi.int/sites/default/files/2022-09/guide-applicants-v.4-rgb.pdf. For example, to be included on the List of Assistants to Counsel, individuals must demonstrate five years of experience in criminal proceedings or specific competence in international or criminal law. *Regulations of the Registry*, *supra*, reg. 124.

## II. THE EO SIGNIFICANTLY HARMS THE ICCBA, ICC COUNSEL, AND THE ICC'S INTEGRITY

The EO threatens the ability of the ICCBA's members and other counsel operating at the ICC to comply with their ethical and professional obligations and perform their duties. It risks obstructing the effective functioning of the ICC and, importantly, access to justice for those implicated in and otherwise affected by the most serious international crimes.

### A. The EO Treads on the ICCBA's Members' and other ICC Counsel's Ability to Satisfy their Professional and Ethical Obligations

The EO harms ICCBA's members and other ICC counsel directly by interfering with their ability to represent their clients and participate in ICC proceedings. As set forth above, pursuant to the EO, foreign persons and organizations who contravene the EO's dictates can be included on the SDN List or otherwise penalized. Those who support Designated Individuals risk being sanctioned themselves, if they are foreign, or imprisonment, if they are American. Given the risk of imprisonment, the fear of violating the EO is especially acute for American ICC counsel.

In reaction to the EO's threats, some ICCBA members and other ICC counsel have changed how they practice, including how they represent clients in ICC proceedings. For example, some ICC counsel, particularly Americans and those who practice or reside in the United States, have chosen not to engage with the ICC due to fear of being ensnarled in the EO's sanctions regime. *See, e.g.,* Decl. of Katherine Gallagher, ECF No. 43 ("CCR Decl."), ¶¶ 29-35; Decl. of James A. Goldston, ECF No. 44 ("OSI Decl."), ¶¶ 26, 28-31. Others have stopped seeking ICC work, disengaged from ICC activities, or stepped back from proceedings due to the sanctions climate. *See, e.g.*, CCR Decl. ¶¶ 29-35; OSI Decl. ¶¶ 26, 28-31. Without limitation to the Disfavored Investigations, Center for Constitutional Rights ("CCR") attorneys have stopped actively representing clients before the ICC and, in some cases, withdrawn as counsel entirely. *See, e.g.*, CCR Decl. ¶¶ 29, 33. They have also declined new representations before the ICC. *Id*. CCR and Open Society Institute ("OSI") attorneys have been forced to abandon one of their central obligations as independent counsel practicing before the ICC: to liaise with the ICC's different organs, including the OTP. *See, e.g.*, *id*. ¶¶ 30, 34, 38; OSI Decl. ¶¶ 26, 31. Because members of the OTP and the U.N. Special Rapporteur are included on the SDN List, attorneys practicing before the ICC wish to avoid interacting with them out of fear of risking exposure to the EO's sanctions regime. *See, e.g.*, CCR Decl. ¶¶ 30, 38; OSI Decl. ¶¶ 26, 31. Finally, CCR and OSI attorneys can no longer communicate or interact with the designated organizations, severely hampering their ability to advocate for their clients at the ICC. *See, e.g.*, CCR Decl. ¶¶ 33, 35-37; OSI Decl. ¶¶ 27-28.

It is easy to imagine any number of other decisions counsel may make in an effort to avoid getting caught up in the EO's web of sanctions and penalties. For example, counsel might refrain from making referrals for investigation and prosecution to the ICC, refrain from presenting certain

arguments to the court, or encounter difficulty engaging witnesses or experts, including military experts who fear sanctions. By forcing counsel to mold their advocacy in response to the U.S. government's political agenda, the EO threatens to impair the ability of CCR and OSI attorneys—and that of any other similarly situated lawyers—to fulfill their ethical and professional obligations to represent their clients in connection with the ICC's investigations and prosecutions. In other words, the EO improperly pressures counsel to make decisions regarding the representation of their clients on the basis of the U.S. government's actions rather than their clients' needs and interests, in contravention of counsel's professional and ethical obligations.

### B. The EO Inflicts Harm on the ICCBA as an Institution

The EO harms the ICCBA not only through the harm it causes to the ICCBA's membership and other counsel it supports, but also directly as an institution.

First, as an institution, the ICCBA has been harmed because it is devoting resources to assess the effect of the sanctions on ICC counsel's practice and to determine how to protect ICC counsel from sanctions and other penalties. For example, the ICCBA has issued statements condemning the EO and highlighting "the wider impact that sanctions and other coercive measures may have upon the ability of legal professionals to perform their duties and upon the effective administration of justice." ICCBA, *The ICCBA Condemns Further US Sanctions Against the President of the ICC and a Senior Trial Lawyer*, (Aug. 20, 2026), https://www.iccba-abcpi.org/post/the-iccba-condemns-further-us-sanctions-against-the-president-of-the-icc-and-a-senior-trial-lawyer; *see also* ICCBA, *ICCBA Condemns the Expansion of US Sanctions to ICC Judges* (Jun. 6, 2025), https://www.iccba-abcpi.org/post/iccba-condemns-the-expansion-of-us-sanctions-to-icc-judges (describing the EO as "a serious escalation of political interference with the [ICC]'s independent judicial functions" and "a direct threat to international justice").

Moreover, considering the support that it provides to its members, ICC counsel, and the ICC's operations, the ICCBA as a whole may be potentially at risk of sanctions. As a result, it must carefully consider its statements, activities, and involvement with the ICC.

Second, and more significantly, the EO interferes with the ICCBA's institutional interest in protecting its members' and other ICC counsel's ability to perform their professional duties independently and without interference. One of the ICCBA's paramount objectives is ensuring that ICC counsel act ethically and can provide a range of services to clients without fear of taking certain viewpoints. ICCBA Const. art. 2, §§ 1, 2. By pressuring ICC counsel, members of the OTP, and the ICC's judiciary to perform their jobs pursuant to the U.S.'s political preferences rather than in the interest of justice and the rule of law, the EO impedes the ICCBA's ability to satisfy its mission. As set forth above, the EO pressures ICC counsel to disregard their ethical and professional obligations outlined in the ICC's Rules and Procedures and the Code of Conduct. This directly threatens the ICCBA's ability to support its members and other ICC counsel in following the professional and ethical standards required for ICC practice.

### C. The EO Poses a Threat to the Integrity of ICC Proceedings

By compromising the ICC's independence, the EO also jeopardizes the integrity of ICC proceedings. The independence of the ICC's organs, such as the judiciary and the OTP, is foundational to the ICC's efficient and just operations. *See, e.g.*, Rome Statute, arts. 42, 53; ICC, *Rules of Proc. and Evid.*, Rule 5; ICC, *Code of Judicial Ethics* arts. 3-5, ICC-BD/02-03-22 (as amended Oct. 7, 2022). ICC counsel rely on this independence when dealing with the ICC—without it, they cannot be certain that their clients are being treated justly. By design, the EO aims to compromise that independence by penalizing individual ICC actors for making decisions at odds with the U.S. government's political preferences. As the ICCBA has previously articulated, by

"targeting . . . individuals for performing their duties," the EO "undermines the fundamental principle that judicial and legal professionals must be able to carry out their functions free from political pressure, intimidation or coercion" and "risk[s] obstructing the effective functioning of the Court . . . ." *The ICCBA Condemns Further US Sanctions Against the President of the ICC and a Senior Trial Lawyer*, *supra*.

The EO also erodes the trust that ICC counsel have in the court's operations and their faith in its ability to uphold the rule of law. *See id.*; *ICCBA Condemns the Expansion of US Sanctions to ICC Judges*, *supra*. These ramifications for the ICC's operations and threat to its integrity are far-reaching. Because of the EO's broad scope, the challenge to the ICC's operations is not limited to proceedings involving the Disfavored Investigations or the Designated Individuals but can include presently unidentified conduct and individuals.[1] *See* EO 14,203, Preamble, §§ 3, 8(d); 31 C.F.R. § 548.701 (2026). The court as a whole is under threat.

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' motion for preliminary injunction.

[1] In addition to the existing sanctions regime, the U.S. government has indicated that it intends to levy even more sanctions on ICC stakeholders, with the explicit goal of crippling the court and eviscerating the international rule of law. *See* Michael Dalton & Alexander Ward, *Trump Ramps Up Bid to Dismantle International Criminal Court*, WALL STREET JOURNAL, Sept. 20, 2026, https://www.wsj.com/politics/policy/trump-administration-prepares-to-sanction-the-international-criminal-court-85f5f44c?st=J5xWZ1&reflink=article_email_share. The potential for a separate set of sanctions further threatens the court's integrity and the rule of law.

Respectfully submitted,

**INTERNATIONAL CRIMINAL COURT BAR ASSOCIATION**

By its attorneys,

*/s/ Tami Stark*

Tami Stark
Katie Renzler
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel. (212) 202-2600
tstark@shertremonte.com
krenzler@shertremonte.com

*Counsel for* Amicus Curiae

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c)

I, Tami Stark, counsel for *Amicus Curiae*, hereby certify that the foregoing brief complies with the word count limitation set forth in Local Rule 7.1(c). This document contains 3,373 words, excluding the caption, table of contents, table of authorities, signature block, and required certificates.

*/s/ Tami Stark*